UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                      Case Number 15-20317

v.                                           Honorable David M. Lawson

BRIAN WILLIAMS,

                    Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Brian Williams has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons (BOP) that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2). Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied. The Court does not oppose early placement by the BOP in home confinement at the earliest appropriate date under the CARES Act, 18 U.S.C. § 12003(b)(2).

I.

In July 2017, Williams pleaded guilty to conspiracy to possess with intent to distribute 500 or more grams of cocaine base and conspiracy to sponsor an animal fighting venture and to train animals for fighting. On December 8, 2017, the Honorable Avern Cohn sentenced him to concurrent prison terms totaling 48 months. He has served about 29 months, and his projected release date is July 4, 2021.

On May 15, 2020, Williams submitted a request for compassionate release or home confinement to the warden of FCI Milan, where he is confined.  He apparently never heard back.  He then filed two *pro se* emergency motions for compassionate release, one on May 29, 2020, and the second on June 24, 2020.  The Court appointed counsel, who filed a supplement to his motions for compassionate release on July 17, 2020.

Williams is a 40-year-old African-American man with a chronic back condition and diagnosed mental health issues.  He uses Triamcinolone cream to treat a rash and acetaminophen for occasional pain but takes no other medications regularly.  He has been prescribed duloxetine for back pain, but he stopped using it.

Williams is imprisoned at FCI Milan in Milan, Michigan, one of the BOP facilities that has done a poor job of limiting the spread of the novel coronavirus.  The facility currently houses 1,362 inmates.  As of August 4, 2020, two inmates and one staff member were infected with COVID-19, three inmates had died from COVID-19, and 98 inmates had been infected and recovered from the virus.  *See* https://www.bop.gov/coronavirus/.  According to a recent report, 55 staff have tested positive, 54 have recovered and returned to work, and one is pending recovery.  The report does not disclose how many staff or inmates have been tested.

This incident was not Williams's first run in with the law.  He has another conviction for possessing cocaine and a conviction for assault with a dangerous weapon (an assault rifle).  In prison, however, he describes himself as "a model inmate" who has never received any tickets or infractions during his incarceration.  He completed several educational courses, including basic GED courses, a welding class, and a parenting program.  He also participated in the residential reentry courses to prepare for halfway house and home confinement.

When released, Williams intends to live with his mother and her significant other in Clinton Township, Michigan.  Williams has no employment history, relying for income exclusively on Social Security disability benefits and illicit activity until his incarceration.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.*  "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)).  Williams relies on subparagraph (i) of the statute.  Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13,

which simply recites the statute.  The commentary adds gloss, which does not have the force of law.  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

Williams's showing on the second element — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other two.  To establish extraordinary and compelling reasons for the relief he requests, he cites the coronavirus pandemic, in combination with chronic back pain and mental health issues.  Her adds that he poses no danger to the community if released, he has behaved well in prison, and he has less than a year left in his sentence.

The government does not raise any exhaustion defense in its opposition, so there is no procedural obstacle to a ruling on the merits of the motion.  However, the defendant has not advanced sufficiently extraordinary or compelling circumstances to warrant a sentence reduction based on any health risk because he has not pointed to any individual medical condition of his that comprises a recognized serious risk factors for coronavirus infection.

Certainly, the ongoing pandemic comprises an extraordinary threat to all members of society, and especially to those who are incarcerated.  *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020).  "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020). "[T]he crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past

months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It also is widely recognized and publicly acknowledged that persons over the age of 65 are at increased risk of severe or fatal consequences from the disease. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Ctrs. for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  However, the defendant's age (40) does not place him in a recognized high-risk category.  He alludes to various circumstances of confinement, which, he contends, increase the odds that he may contract the virus, but he has not pointed to any medical factors that place him at increased risk of severe consequences from a possible infection, and he therefore has not made a persuasive case that extraordinary and compelling circumstances warrant a sentence modification based on any present risk to his health.

Williams has done well in a prison setting.  But as commendable as Williams's conduct in prison has been, it does not alter the fact that he still must establish extraordinary and compelling reasons for the reduction of a sentence that otherwise "may not [be]modified] . . . once it has been imposed."  18 U.S.C. § 3582(c).

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons.  But the pandemic is a global phenomenon and some risk is inherent no matter where Williams resides, either at home or in prison.  He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that

he is at an especially elevated risk of harm in the present situation of confinement.  And Michigan has a significant number of confirmed COVID-19 cases.  Williams has not established extraordinary and compelling reasons based on his physical health, and therefore he has not shown justification to reduce his sentence to time served.

However, looking at Williams's performance over the last several few in prison, he ought to be given consideration by the BOP for placement in home confinement at the earliest appropriate date under the CARES Act, 18 U.S.C. § 12003(b)(2).  The Court has no authority to order that relief.  Section 12001(b)(2) is directed at the Attorney General.  Under that section, "[d]esignation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP."  *United States v. McCloskey*, No. 18-CR-260, 2020 WL 3078332, at *2 (S.D. Ga. June 9, 2020); *see also United States v. Calderon*, 901 F. App'x 730, 731 (11th Cir. Feb. 24, 2020) (explaining that under 34 U.S.C. § 60541(g)(1)(A), the Attorney General "may" release eligible elderly offenders, and the district court was without jurisdiction to grant relief).  And the Court's recommendation has no binding effect on the BOP.  18 U.S.C. § 3621(b).  Nonetheless, Williams is scheduled for home placement on February 9, 2021, and the Court recommends that the BOP give careful consideration to placing Watkins in a community setting as soon as circumstances permit.

### III.

Williams has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release

(ECF No. 751 and 765) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
Dated:   August 18, 2020                                    United States District Judge